UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
CATHERINE STONE-CLARK,                )
                                                    )
            Plaintiff,                              )
                                                    )
      v.                                            )
                                                    )          Civil Action No. 04-0373 (PLF)
BLACKHAWK, INC.,                          )
                                                    )
            Defendant.                            )
_____)

OPINION

            This matter is before the Court on defendant's motion for summary judgment on

plaintiff's claims of *quid pro quo* sexual harassment and retaliation.  Upon consideration of

defendant's motion and plaintiff's opposition, the Court grants defendant's motion for summary

judgment as to the sexual harassment claim, but denies defendant's motion for summary

judgment as to the retaliation claim.

I.  BACKGROUND

            Plaintiff Catherine Stone-Clark is a female former employee of defendant

Blackhawk Security/RMJB LLC Security, Inc.  See Complaint ("Compl.") ¶¶ 7, 10.  Defendant

provides security services, including armed and unarmed security guards, to various buildings in

the District of Columbia metropolitan area.  See Defendant's Motion for Summary Judgment

("Def.'s Mot.") at 9.  In October of 2001, defendant hired plaintiff to work as a security guard

and eventually assigned her to work at 810 Vermont Ave., NW.  See Compl. ¶ 7; Def.'s Mot. at

10.  This building was one of several Department of Veterans Affairs ("VA") buildings

defendant had contracted to secure.  See Def.'s Mot. at 4.  In May 2002, Anthony Summers,

Project Manager for defendant's VA contract, began working at 810 Vermont Ave., NW.  See

Compl. ¶ 8.  When Summers arrived at the building, plaintiff was assigned the task of escorting

him around the building.  See Declaration of Plaintiff Catherine Stone-Clark ("Pl.'s Decl.") ¶ 3;

Plaintiff's Opposition to Defendant's Mot. for Summary Judgment ("Pl.'s Opp.") at 4.  At that

time, Summers requested a date with plaintiff, which request plaintiff declined.  See Compl. ¶ 8;

Pl.'s Decl. ¶ 3.

      Plaintiff alleges that after she refused Summers' request for a date, her work

schedule began to change without explanation.  See Pl.'s Decl. ¶ 4.  In the summer of 2002,

Summers removed plaintiff from the schedule for several weeks because she failed a firearms

course, which defendant required all employees to pass in order to carry a firearm.  See Pl.'s

Decl. ¶ 5.  Plaintiff alleges that other individuals who failed the same course continued to work

during the same period.  See id.; Declaration of Paula Z. Ross ¶ 16.  Plaintiff was at other times

removed from the schedule without explanation.  See Pl.'s Decl. ¶ 4.  Other than the one request

that she go out with Summers, he initiated no further discussion about the matter.  See

Deposition of Catherine Stone-Clark ("Pl.'s Depo.") at 27:16-28:2.

      Summers also began to make comments about plaintiff's body after plaintiff

rejected his request for a date.  See Compl. ¶ 2.  Two or three months after Summers' request for

a date, plaintiff's co-workers overheard Summers comment about plaintiff's "butt."  See Pl.'s

Depo. at 28:10-28:18; Pl.'s Decl. ¶ 4.  One co-worker heard Summers say to a fellow supervisor,

"where is that big ass Stone working?"  See Declaration of Clinton Sherrod  ¶ 5.  Summers did

not make these comments to plaintiff herself.  See  Pl.'s Depo. at  28:20.  Summers also

commented on plaintiff's body in February of 2003.  <u>See</u>  Pl.'s Decl. ¶ 6.  In response to

plaintiff's question about why she had not received her credentials, Summers said "if I had gotten

off my fat ass and gotten my paperwork in, I would have had my credentials by now."  <u>Id</u>.

       Plaintiff eventually reported Summers' behavior to defendant's Vice President,

Nathaniel Wood, who urged plaintiff to file a complaint if she felt that Summers had retaliated

against her for rejecting his request for a date.  <u>See</u> Pl.'s Decl. ¶ 9; Affidavit of Nathaniel Wood

("Wood Aff.") ¶ 8.  On May 23, 2003, plaintiff did file a formal complaint with the United States

Equal Employment Opportunity Commission ("EEOC").  <u>See</u> Compl. ¶ 10; Def.'s Mot. at 6.

Plaintiff amended her EEOC complaint in October of 2003 to add a claim of retaliation.

       On May 27, 2003, shortly after plaintiff filed her EEOC complaint, defendant

claims that it received a request from the VA that defendant no longer allow plaintiff to work at

VA buildings.  <u>See</u> Def.'s Mot. at 5; Exh. C to Def.'s Mot., Department of Veteran Affairs

Memorandum to Blackhawk Security.  Defendant removed plaintiff from the work schedule for

all VA buildings and did not reschedule her to work elsewhere.  <u>See</u> Def.'s Mot. at 6.  The parties

dispute the reasons underlying defendant's failure to reschedule plaintiff.  Defendant alleges that

it offered to reassign plaintiff to buildings other than those of the VA, but that plaintiff rejected

its offer.  <u>See</u> Def.'s Mot. at 5-6.  Plaintiff denies receiving an offer of reassignment at that time,

though she admits that during an EEOC-sponsored mediation defendant's attorney commented

that he might be able to explore the possibility of a reassignment.  <u>See</u> Pl.'s Decl. ¶¶ 10, 11, 13.

       Plaintiff brings suit, alleging *quid pro quo* sexual harassment and retaliation.  <u>See</u>

Compl. ¶ 1.  Defendant moves for summary judgment on both of plaintiff's claims, arguing

primarily that she cannot prove *quid pro quo* sexual harassment because she cannot show that

Summers made sexual advances towards her and that she cannot prove retaliation because defendant did not terminate plaintiff.  See Def.'s Mot. at 13-15.

## II.   DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits or declarations, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(c).  Material facts are those that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  When considering a summary judgment motion, the Court will accept as true the non-movant's evidence.  See id. at 255; Washington Post Co. v. United States Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).

On a motion for summary judgment, the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must find support in affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  See FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-moving party must "provide evidence that would permit a reasonable jury to find" in her favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the non-movant's evidence is "merely colorable" or "not significantly probative," the Court may grant summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  To defeat summary judgment, a plaintiff must produce more than "a scintilla of evidence to support [her] claims."

Freedman v. MCI Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).  In an

employment discrimination case, "[u]sually, proffering evidence from which a jury could find

that the employer's stated reasons were pretextual will be enough to get a plaintiff's claim to a

jury." George v. Leavitt, 407 F.3d 405, 413 (D.C. Cir. 2006) (citing Carpenter v. Fed. Nat'l

Mortgage Ass'n, 165 F.3d 69, 72 (D.C.Cir.1999) (citing Aka v. Wash. Hosp. Ctr., 156 F.3d 1284

(D.C.Cir.1998) (en banc))) (internal quotations omitted).

### B. Quid Pro Quo *Sexual Harassment Claim*

To make out a *prima facie* case of *quid pro quo* sexual harassment, the plaintiff

must show: (1) that she was a member of a protected class; (2) that she was subject to

unwelcome sexual advances or requests for sexual favors; (3) that the harassment complained of

was based on sex; (4) that the employee's submission to the unwelcome advances was an express

or implied condition for receiving job benefits or that the employee's refusal to submit to the

supervisor's sexual demands resulted in an adverse job consequence; and (5) that respondeat

superior liability exists.  See Gary v. Long, 59 F.3d 1391, 1396 (D.C. Cir. 1995);  Ryczek v.

Guest Servs., 877 F. Supp. 754, 760 (D.D.C. 1995); see also Lutkewitte v. Gonzales, 436 F.3d

248, 260 (Brown, J. concurring).   "[T]he gravamen of a quid pro quo claim is that a tangible job

benefit or privilege is conditioned on an employee's submission to sexual blackmail and that

adverse [employment] consequences follow from the employee's refusal." Burton v. Batista, 339

F.Supp.2d 97, 109 (D.D.C. 2004) (quoting Gary v. Long, 59 F.3d at 1396).

Defendant argues that the Court should grant summary judgment in its favor on

plaintiff's sexual harassment claim because Summers' conduct did not constitute a sexual

advance.  See Def.'s Mot. at 13.  Defendant further contends that even if plaintiff could establish

a sexual advance she could not establish a causal connection between her rejection of that advance and her schedule changes.  See id. at 14.  Plaintiff counters that when Summers requested a date with her and commented on her "butt" to co-workers he made sexual advances. See Pl.'s Opp. at 10-11.  In retaliation for her rejection of those advances, plaintiff claims, Summers removed her from the work schedule.  See Pl.'s Opp. at 11.  Plaintiff also contends that defendant's proffered explanation for the reductions in her hours is pretextual.  See id. at 11.

The Court concludes that plaintiff's sexual harassment claim cannot survive summary judgment because she cannot prove that Summers' conduct constituted a demand for a sexual relationship, or that Summers' comments to others about her body constituted "unwelcomed sexual advances." Ryczek v. Guest Servs., 877 F. Supp. at 760.  A single request for a date without other conduct of a sexual nature, is not request for a sexual favor.  See Lynch v. New Deal Delivery Service, Inc., 974 F. Supp. 441, 452 (D.N.J. 1997) (concluding that "invitations to dinner, without more, cannot be reasonably characterized as the type of sexual demand that would give rise to a *quid pro quo* claim."); Hanson v. American Express Co., Civil No. C85-0643G, 1986 U.S. Dist. LEXIS 16834 at * 6-7 (D. Utah Dec. 8, 1986) (*aff'd mem.*, 53 Fair Empl. Prac. Cas. (BNA) 1624 (10th Cir. Oct. 18, 1988)).  The Court concludes that Summers' single request for a date does not amount to a demand for a sexual favor which could support a *quid pro quo* sexual harassment discrimination claim.  See Burton v. Batista, 339 F. Supp. 2d at 109 ("Such a sexual demand is the necessary 'quid' in the *quid pro quo* sexual harassment claim, and it is plainly absent here.").

Summers' comments about plaintiff's buttocks also do not constitute sexual advances or demands for sexual favors.  Plaintiff claims that in response to her inquiry about her

6

credentials Summers stated that "if I had gotten off my fat ass and gotten my paperwork in, I would have had my credentials[.]" Pl.'s Opp. at 5; <u>see</u> Pl.'s Decl. ¶ 6. Plaintiff also alleges that Summers made comments to her co-workers about her "big ass." Pl.'s Opp. at 10; <u>see also</u> Pl.'s Decl. ¶¶ 4, 5, 6. She produces an affidavit from a co-worker, who states that he overheard Summers say to a fellow supervisor "where is that big ass Stone working?" Sherrod Decl. ¶ 5. Although these statements refer to plaintiff's anatomy, nothing about them or their context suggests that they were sexual in nature. Summers did not, by making these statements, demand a sexual relationship with plaintiff or engage in "sexual blackmail." <u>Burton v. Batista</u>, 339 F. Supp. 2d at 109. Furthermore, there has been absolutely no evidence presented that there was a causal connection between plaintiff's being taken off the schedule for several weeks and her refusal to accept Summers' single request for a date or his comments about her buttocks. Nor is there evidence beyond the mere conclusory assertion that she would not have been removed from the schedule had she accepted Summers' invitation.

The Court grants defendant's motion for summary judgment on this claim. Because defendant's conduct does not constitute demands for sexual favors or demands, plaintiff cannot satisfy an essential element of her claim, and, therefore, cannot establish a *prima facie* case of sexual harassment.

### *C. Retaliation Claim*

To establish a *prima facie* case of retaliation, "the plaintiff must present evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse action against her; and (3) the adverse action was causally related to the exercise of her rights." <u>Holcomb v. Powell</u>, 433 F.3d at 901-02 (internal quotations and citations omitted); <u>see also</u>

Hussain v. Nicholson, 435 F.3d 359, 366 (D.C. Cir. 2006).  Plaintiff may demonstrate that a causal connection exists with proof of both defendant's knowledge of her protected activity and temporal proximity between the protected activity and retaliation.  See Holcomb v. Powell, 433 F.3d at 903; Chandamuri v. Georgetown Univ., 274 F. Supp. 2d 71, 84 (D.D.C. 2003).  The plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in the case of a retaliation claim means "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington Northern & Santa Fe Ry. v. White, 126 S. Ct. 2405, 2415 (2006) (internal quotations and citations omitted).

Plaintiff satisfies the first element of her *prima facie* case because she engaged in the protected activity of filing an EEOC complaint.  See Holcomb v. Powell, 433 F.3d at 902.

Plaintiff satisfies the second element of her *prima facie* case because, she alleges, defendant subjected her to an adverse action when it dramatically reduced her work hours and job responsibilities by removing her from the schedule completely.[1]  An adverse action in this context means "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington Northern & Santa Fe Ry. v. White, 126 S.Ct. at 2415 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  A significant change in pay or a sharp reduction in responsibilities usually constitutes an adverse action.  See Forrkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002); Lee v. Christian Coalition of America, 160 F.

---

[1]     Plaintiff claims, *inter alia*, that she faced such consequences because defendant constructively discharged her by completely removing her from the work schedule.  See Compl. ¶ 1.  The Court, however, need not decide whether plaintiff has introduced enough evidence to support her constructive discharge claim, because the record otherwise raises a genuine issue as to whether plaintiff suffered an adverse action.

Supp. 2d 14, 41 (D.D.C. 2001) (holding that a fifty percent cut in pay qualified as a "significant change" in a person's employment status sufficient to constitute an adverse employment action).

Plaintiff alleges that defendant completely removed her from the schedule, see Compl. ¶ 1, while defendant contends that plaintiff removed herself from the schedule when she refused to accept its offer to transfer her to non-VA buildings. See Def.'s Mot. at 15. Plaintiff denies that defendant offered to reassign her. See Pl.'s Decl. ¶ 10; Pl.'s Opp. at 12.[2] If the Court accepts plaintiff's evidence as true (as it must on summary judgment), she has endured both a significant change in pay and a significant reduction in responsibilities, because defendant reduced plaintiff's hours (and therefore pay) and job responsbilities to zero. Because plaintiff experienced a significant change in pay and job responsibilities, a reasonable jury could conclude that defendant subjected plaintiff to an adverse action.

Plaintiff establishes the final element of her *prima facie* case because she raises a genuine issue of material fact as to whether defendant terminated her because she filed the EEOC complaint. A plaintiff may establish a causal connection between her participation in a protected activity and an adverse action by showing that (1) the employer knew that the plaintiff engaged in protected activity, and that (2) the adverse action took place shortly after plaintiff's participation in that activity. See Holcomb v. Powell, 433 F.3d at 903. Plaintiff filed her complaint on May 23, 2003. See Pl.'s Opp. at 6. Defendant removed plaintiff from the schedule on June 6, 2003, within one month of the filing of the EEOC complaint. See id; Def's. Mot. at 6. This temporal proximity establishes the necessary causal connection to satisfy the final element of plaintiff's

---

[2]     Plaintiff admits that during an EEOC sponsored mediation defendant's attorney stated that he would "look into offering me a return to work as a settlement." See Pl.'s Decl. ¶ 13. She denies, however, that this statement constituted an offer to reassign her. See id.

*prima facie* case.  See Singletary v. District of Columbia, 351 F.3d 519, 525 (D.C. Cir. 2003).

Now that plaintiff has established a *prima facie* case, defendant must offer a legitimate, non-retaliatory reason for reducing plaintiff's hours.  See Holcomb v. Powell, 433 F.3d at 901.[3]  Defendant meets this burden by asserting that it did not schedule plaintiff for work after June 6, 2003 only because defendant fulfilled the VA's request that defendant remove plaintiff from the work schedule at all VA buildings, and plaintiff thereafter refused defendant's offer to reassign her to other buildings.  See Def.'s Mot. at 15; Wood Aff. ¶ 7.

Because defendant has met its burden, plaintiff must provide sufficient evidence to allow a reasonable jury to conclude that defendant's proffered reason is pretextual.  See Holcomb v. Powell, 433 F.3d at 901; George v. Leavitt, 407 F.3d at 413.  Plaintiff meets her burden by producing evidence that undermines defendant's claim that plaintiff removed herself from the schedule when she rejected its offer to reassign her.  In her declaration, plaintiff asserts that defendant never offered to reassign her.  See Pl.'s Decl. ¶ 13.  If defendant never offered to reassign plaintiff,  plaintiff could not have refused the offer of reassignment and therefore could not have removed herself from the work schedule.  The question is one for the jury, which will have to evaluate the credibility of the sworn testimony of the plaintiff, Mr. Summers, and perhaps others.  Plaintiff's proffered evidence raises a genuine issue of material fact that would allow a reasonable jury to conclude that defendant's proffered reason for its actions is pretextual.

Because plaintiff has established a *prima facie* case of retaliation and has raised a

---

[3]      It is alleged that defendant removed plaintiff from the schedule twice.  The first time involved several weeks in the summer of 2002, after plaintiff failed the firearms course.  That removal was before plaintiff filed her EEOC claim on May 23, 2003.  See Pl.'s Opp. at 5-6; Pl.'s Decl. ¶¶ 5, 9.  That 2002 removal from the schedule is not relevant to plaintiff's retaliation claim, since it predates any protected activity.  The second removal was after June 6, 2003, which is relevant to the retaliation claim and is discussed here.

genuine of issue of fact as to whether defendant's proffered reason for failing to reschedule plaintiff is pretextual, the Court will deny defendant's motion for summary judgment on plaintiff's retaliation claim.


### III.   CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted in part and denied in part.  An Order consistent with this Opinion shall issue this same day.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: November 1, 2006